UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WARREN D. PRICE,

                    Plaintiff,

                                               **Hon. Hugh B. Scott**

                    v.

                                               05CV506A

                                               **Report**
                                                **&**
GENERAL MOTORS CORPORATION,        **Recommendation**

                    Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)© (Docket No. 8, Order of Aug. 24, 2005). The instant matter before the Court is defendant's motion (Docket Nos. 35, 36[1]) for summary judgment.

## **BACKGROUND**

As stated in an earlier Report & Recommendation (Docket No. 17, see also Docket No. 18, Order adopting that Report), plaintiff is suing his employer, defendant General Motors ("defendant" or "GM"), for age discrimination under the Age Discrimination in Employment

---

[1] In support of its motion, defendant filed a notice of filing of this motion, Docket No. 35; attached Statement of Undisputed Facts (with exhibits), id., and memorandum of law (with additional exhibits), Docket Nos. 35, 37; the motion for summary judgment, Docket No. 36; copies of cited authorities, Docket No. 38; proposed Order, Docket No. 39; and a reply memorandum (with still more exhibits).
    In opposition, plaintiff filed his Response to Defendant's Statement of Undisputed Facts, Docket No. 42; his affidavit, Docket No. 43; his counsel's affirmation with exhibits, Docket No. 44; his memorandum of law, Docket No. 45.

Act, 29 U.S.C. § 623 ("ADEA"), and New York State Human Rights Law, N.Y. Exec. Law §§ 390, et seq. ("NYHRL"). He alleges that, in 2003, he applied for two lateral openings as a millwright for a new engine launch team ("Launch Team"). Plaintiff was 59 years old when he interviewed (with others) for the position and was the most senior millwright. He was not selected. Instead, two other employees (aged 45 and 55) were chosen. Plaintiff claims age-based harassment. He alleges that the GM manager made a few age-based comments, asking about his retirement plans and whether, given his age, he could travel since the job included travel (Docket No. 1, Compl. ¶¶ 23-25). The first cause of action alleged GM violated the ADEA by not promoting plaintiff due to his age and by "deriding" and "denigrating" him because of his age (id. ¶ 35), while the second cause of action alleged that the similar facts established a violation of NYHRL (id. ¶ 39).

Defendant moved to dismiss (Docket No. 6), contending that the Complaint fails to allege facts to show that plaintiff was subject to a hostile work environment due to his age in violation of either the ADEA or NYHRL. This Court denied that motion (Docket Nos. 18 (Order), 17 (Report & Rec.)). Defendant then filed its Answer (Docket No. 21) and the Court entered a Scheduling Order (Docket No. 24), with dispositive motions due by December 29, 2006.

*Defendant's Summary Judgment Motion*

Defendant then filed a timely motion for summary judgment (Docket Nos. 35, 36). Defendant denies that plaintiff's age was a factor in declining to hire him for the Launch Team and argues that the two, younger employees hired for the new Launch Team had better attendance and disciplinary records than plaintiff. Further, one of the millwrights hired was not significantly younger than plaintiff. Defendant contends that placement on the Launch Team

was not a promotion, it did not increase the pay or benefits of the successful millwright (Docket No. 37, Def. Memo. of Law at 2, 6).

The hiring for the Launch Team was excepted as a "critical period" under the national and local collective bargaining agreements, hence seniority rules were waived by GM and the United Auto Workers ("UAW"). Plaintiff disputes whether the exception applied under the collective bargaining agreements, concluding that normal seniority rules applied (Docket No. 45, Pl. Memo. of Law at 2-3). Members on the Launch Team had to commit to staying on the project to its 2005 deadline (Docket No. 37, Def. Memo. at 3-4). General Motors representative Betsy Anderson and union representatives met with the millwright candidates. Anderson reviewed summaries of these employees' attendance and disciplinary records, but not their personnel files (id. at 4) and she was not told the applicants' ages (id.). Two millwrights were selected by their seniority unless the most senior employee had unacceptable attendance and disciplinary records (id. at 4). Anderson selected five millwrights to interview, plaintiff, the two millwrights who were selected, and two others. While plaintiff was the most senior of the applicants he also had the highest rate of absenteeism and tardiness and had a record of disciplinary issues, such as being confrontational with management and other employees, and being non-committal to long-term projects (id. at 5, Ex. 3, Anderson EBT at 32-33, 55-57, Ex. 8). The Launch Team required workers who were willing to work flexible hours, work without interruption to the end of shift, work without unexcused absences and be willing to not transfer from the Team until after the product launch deadline of June 2005 (id. at 6; Docket No. 35, Def. Statement ¶ 31). The two millwrights selected did not have negative records and

their seniority dates were within months of each other (id. at 5, Ex. 3, Anderson EBT at 71; Docket No. 35, Def. Statement ¶¶ 35, 36).

In its present motion, defendant argues that plaintiff cannot establish a prima facie case of age discrimination. First, plaintiff was not qualified for the Launch Team due to his record of absenteeism and disciplinary issues (Docket No. 37, Def. Memo. at 8). Further, plaintiff did not suffer an adverse employment action since the position on the Launch Team was not a promotion or an increase in pay or benefits; plaintiff did not suffer a materially adverse change in the terms and conditions of his employment (id. at 10). The only benefit plaintiff claimed was the fact that Launch Team members traveled for the project (id. at 11, Ex. 2, Price EBT at 89-90; see Docket No. 1, Compl.). A union representative testified that the Launch Team was not an advantage to one's career as a millwright (Docket No. 35, Def. Statement ¶ 37; Docket No. 37, Def. Memo. at 12), and plaintiff admitted that he did not lose any benefits or suffer any loss from not being on the Launch Team (Docket No. 35, Def. Statement ¶¶ 38, 39). Defendant argues that plaintiff did not lose any benefits by not being placed in the Launch Team and there were only minor disparities between plaintiff's present position and the millwright job on the Launch Team, see Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (Docket No. 35, Def. Statement ¶¶ 38, 39; Docket No. 37, Def. Memo. at 11).

Plaintiff also fails to show a significant age discrepancy to establish his prima facie case of age discrimination, see O'Connor v. Consolidated Coin Counters Corp., 517 U.S. 308, 312-13 (1996) (Docket No. 37, Def. Memo. at 12-13). He also cannot show that General Motors management knew of any significant age disparity between plaintiff and the two millwrights hired, see Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82-83 (2d Cir. 2005) (id. at 13).

If plaintiff somehow met his initial burden of establishing a prima facie case, defendant next argues that it has a legitimate, non-discriminatory reason for its decision, namely the need to have Launch Team members committed to the project for the long haul with out attendance and possible discipline issues (id. at 14, 15). Plaintiff cannot offer evidence of pretext in defendant's stated reason (id. at 16-17).

Defendant also contends that plaintiff's age harassment claim under ADEA or NYHRL is without merit (id. at 17-19). Defendant argues that, at best, plaintiff points to isolated incidents of harassment, see Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59, 62 (2d Cir. 1992); Terranova v. Liberty Lines Transit, Inc., 292 A.D.2d 441, 442, 738 N.Y.S.2d 693, 694 (2d Dep't 2002) (NYHRL) (id.).

*Plaintiff's Response*

Plaintiff argues that there are material issues of fact (Docket No. 45, Pl. Memo. at 2-13), namely when defendant and the UAW agreed to invoke Document 70, the waiver of seniority rules (id. at 2-3). He disputes the hiring process as characterized by defendant (id. at 3-4), arguing that Anderson reviewed a spreadsheet summarizing the candidates' disciplinary history prior to interviewing the candidates (id. at 4-5). Plaintiff emphasized that Anderson repeatedly asked about his retirement plans (id. at 5-6). Anderson claimed that she followed up on attendance and disciplinary issues for the candidates, but plaintiff argues that she only did that to him and disregarded those of one of the hired candidates (Orsini) (id. at 6). Plaintiff disputes the claimed absences and disciplinary problems, for example explaining some absences due to the well known illness of his wife (e.g., id. at 7-8). He concludes that Anderson's asserted reasons for not selecting him are not based on the evidentiary record (id. at 11).

Plaintiff next argues that denial of a position on the Launch Team was an adverse job action under ADEA (id. at 12-13), with plaintiff losing training opportunities and expenses paid travel to Italy, Germany, Poland, and Japan from not being selected (id. at 12, 18).  He also alleges that he lost professional prestige as a result of this denial (id. at 18) and that he had to contend with derision and denigration from co-workers and management when he was not selected (id. at 13, 18).  He claims that he lost weight and suffered ulcers as a result of this distress (id. at 13).

On the burden shifting elements for an age discrimination claim, plaintiff argues that he shows a prima facie case of discrimination, that he was 59 years old and passed over for younger co-workers, that he was qualified for the millwright position for the Launch Team, and the denial of that position was an adverse action under the ADEA (id. at 15-21).  He also argues that he has shown age-based harassment from the humiliation and derision he suffered from his co-workers (id. at 21-22).

*Briefing Schedule*

The Court issued a briefing schedule for this motion, with responses due by January 29, 2007, any reply by February 12, 2007, and the motion was deemed submitted, without oral argument, on February 12, 2007 (Docket No. 41).

## DISCUSSION

I.   Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

6

law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56©. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.     Age Discrimination in Employment

Plaintiff alleges claims under ADEA for age discrimination and age-based harassment. A plaintiff alleging this claim must plead and prove the following to state such a claim: the plaintiff is over the age of 40 and was subjected to age-based harassing words or conduct that unreasonably interfered with the employee's work performance and created an objectively intimidating, hostile or offensive work environment, see, e.g., Crawford v. Median Gen. Hosp., 96 F.3d 830, 834 (6th Cir. 1996); Rivera-Rodriquez v. Frito-Lay Snacks Caribbean, 265 F.3d 15,

24 (1st Cir. 2001); King v. New York City Bd. of Educ., C.S.D. #28, No. 96CV2720, 2000 WL 1897349 at *6 (E.D.N.Y. Dec. 19, 2000) (the analysis of hostile work environment claim same under ADEA as Title VII).  Plaintiff must show that the alleged harassment is so "severe or pervasive [as] to alter the conditions of [the victim's] employment and create an abusive working environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986).  "Isolated, minor acts or occasional episodes do not warrant relief" unless sufficiently severe and plaintiff needs to prove that the incidents were "'sufficiently continuous and concerted' to be considered pervasive" or that one episode was severe enough establish a hostile work environment.  Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) and Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 437 (2d Cir. 1999)).

An employee alleging a violation of Title VII can prove employment discrimination under a three-step, burden shifting test established in McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973).  First, plaintiff has the burden of proving "by a preponderance of the evidence a prima facie case of discrimination," Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  To establish a prima facie case, the plaintiff must show (a) membership in a protected class; (b) qualification for the position; © an adverse employment action; and (d) circumstances that give at least minimal support to an inference of discrimination, Fagan v. New York State Elec. & Gas Corp., 186 F.3d 127, 132 (2d Cir. 1999).  Plaintiff's burden is a minimal one, he "creates a presumption that the employer unlawfully discriminated against the employee" when he sets forth facts sufficient to establish a prima facie case, Burdine, supra, 450 U.S. at 254.

If plaintiff presents a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reasons for the [adverse employment action]," id. at 253 (quoting McDonnell Douglas, supra, 411 U.S. at 802). If the employer presents admissible evidence supporting that legitimate reason, the presumption of discrimination created by the prima facie case is rebutted, Burdine, supra, 450 U.S. at 256. At this point, the burden shifts back to plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext of discrimination," id. at 253. (Docket No. 23, Pl. Memo. at 9-10; Docket No. 15, Def. Memo. at 7.)

Defendant treats plaintiff's New York State Human Rights Law claim as it treats the ADEA claim, arguing that both have similar legal standards (Docket No. 37, Def. Memo. at 8). But if plaintiff's federal ADEA claim is dismissed, the Court need not exercise supplemental jurisdiction over the NYHRL claim. 28 U.S.C. § 1367 grants this Court supplemental jurisdiction over state law claims, provided that the Court has original jurisdiction over the case (that is, at least one federal claim remains pending). When all original jurisdiction claims are dismissed, the Court may decline to exercise supplemental jurisdiction. Id. § 1367(c)(3); see, e.g., Baines v. Masiello, 288 F. Supp. 2d 376, 395 (W.D.N.Y. 2003) (Curtin, J.).

Claims under ADEA and NYSHRL receive the same analysis as Title VII claims, Raskin v. The Wyatt Co., 125 F.3d 55, 60 (2d Cir. 1997), thus the burden shifting standard of McDonnell Douglas applies to the state NYHRL age discrimination claim as with the ADEA claim. Given how intertwined these two claims are, this Court can dispose of the NYHRL claim as it did the ADEA claim.

A.     Prima Facie Case

Defendant contends that, while plaintiff meets the age qualification to fall within the protected class, he did not qualify for the job with the Launch Team, namely attendance requirements for the project (working through the end of the shift, being at work every day with no unexcused absences, and agreeing not to transfer during start up stage) (Docket No. 37, Def. Memo. at 8-9). Of the five candidates reviewed, plaintiff had a higher absentee rate than the others (id. at 10).

Defendant also argues that plaintiff has not suffered an adverse employment action by not being named to the Launch Team (Docket No. 37, Def. Memo. at 10-12). GM terms selection to the Launch Team to be akin to a minor disparity in plaintiff's working conditions elsewhere in the GM Powertrain Tonawanda plant, or a transfer which did not significantly set back or advance his career, see Galabya, supra, 202 F.3d at 640; Rodriguez v. Board of Educ., 620 F.2d 362, 365-66 (2d Cir. 1980) (id. at 11, 12). Plaintiff's union representative testified that selection to the Launch Team was not an advantage and not being placed on the Team was not a disadvantage to a millwright and plaintiff admitted that he would not lose benefits from not being accepted on the Launch Team (id. at 12; Docket No. 35, Def. Statement ¶¶ 38, 39).

Next, defendant contends that the age disparity between the two candidates selected and plaintiff was not "significant" to create an inference of discrimination. One selected employee was 55 years old and the other was 45 years old, while plaintiff was 59 years old at the time of his application. (Docket No. 37, Def. Memo. at 12-14, 6.) Defendant argues that plaintiff needed to prove that GM knew of the substantial age discrepancy between plaintiff and those selected for the Launch Team (Docket No. 47, Def. Reply Memo. at 11).

Plaintiff rests on the belief that seniority rules were not waived for the Launch Team (Docket No. 45, Pl. Memo. at 3; Docket No. 44, Pl. Atty. Affirm. Ex. J), arguing that the waiver of seniority provisions in Document 70 started from "start of production" (Docket No. 45, Pl. Memo. at 3, quoting Docket No. 44, Pl. Atty. Affirm. Ex. J, emphasis in memorandum eliminated), with start of production stated in that notice as June 30, 2005 (Docket No. 44, Pl. Atty. Affirm. Ex. J), and not earlier in the application process. While he was the most senior of the applicant millwrights, defendant contends that his relatively higher absenteeism lead GM to hire the other candidates (Docket No. 37, Def. Memo. at 13-14). Plaintiff contends that he suffered an adverse employment action in not gaining the travel and training that came with selection to the Launch Team (id. at 12-13). He also points to age-based derogatory statements made to him when he was not selected for the Launch Team, with physical distress that resulted from it (id. at 13, 18).

Defendant replies that plaintiff was placed on notice that Document 70 was applicable to the Launch Team during the selection process for millwrights (Docket No. 47, Def. Reply Memo. at 2).

Plaintiff was interviewed in 2003. Plaintiff raises a material issue of fact whether Document 70 applied to the millwright hiring or, as he suggests, applied to hiring <u>after</u> the start up in June 2005. Plaintiff otherwise has not established a <u>prima facie</u> case. The fact that plaintiff was not selected to the Launch Team was not an adverse employment action. Selection to the Launch Team was in effect a lateral transfer, with no material change in benefits or responsibilities. The only thing plaintiff missed by not being selected to the Team was some paid travel abroad for the project. Loss of this opportunity for travel, not quantified by plaintiff

11

except in a general, conclusory fashion, is not a "materially significant disadvantage," Galabya, supra, 202 F.3d at 641, that would qualify as an adverse action and plaintiff otherwise did not lose benefits by not being selected. For completeness, the next elements will be considered.

      B.     Legitimate, Non-Discriminatory Reason

Alternatively, if plaintiff somehow is found to have established a prima facie case of age discrimination, defendant argues that it had a legitimate, non-discriminatory reasons for not placing plaintiff in the Launch Team, namely his absenteeism and disciplinary record (Docket No. 37 at 14, 15-16). Plaintiff refutes the asserted disciplinary record, points to the record of one of the successful candidates that was disregarded by defendant's management, and concludes that the stated reason was mere pretext (Docket No. 45, Pl. Memo. at 6-12). Courts do not sit as a "super-personnel department" weighing the prudence of employment decisions made by firms charged with employment discrimination, Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986).

      C.     Whether Defendant's Reason Was Pretext

Defendant contends that plaintiff cannot establish that defendant's reason was pretextual (Docket No. 37, Def. Memo. at 16-17). Plaintiff only argued pretext from the per se discrimination in not being selected (Docket No. 45, Pl. Memo. at 16, 20-21; see Docket No. 47, Def. Reply Memo. at 13). Plaintiff here has not articulated that defendant's true reason was pretextual.

      D.     Age-Based Harassment

Defendant next argues that plaintiff fails to assert a hostile work environment as a matter of law (Docket No. 37, Def. Memo. at 17-19), by failing to show that his workplace was permeated with discriminatory intimidation (id. at 17).  Plaintiff can only point to four statements about plaintiff's retirement plans from Ms. Anderson and unsubstantiated allegations that co-workers ridiculed him when plaintiff was not selected that were not clearly age-based (id. at 18).

The record here does not indicate a connection between the co-workers purported activities and GM.  Further, the interview questions here about plaintiff's retirement plans do not constitute creation of a hostile work environment based on plaintiff's age.

## CONCLUSION

Based upon the above, it is recommended that defendant's motion (Docket Nos. 35, 36) for summary judgment be **granted**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                                              /s/ Hugh B. Scott
                                                                               Hon. Hugh B. Scott
                                                            United States Magistrate Judge

Dated: Buffalo, New York
        April 19, 2007